**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: <br> RONALD B. WASHINGTON, <br>     Debtor. | Bankruptcy  No.: 08-24389 (JKF) <br> Chapter 13 |
| RONALD B. WASHINGTON <br>     Plaintiff. | |
| v. <br><br> SAXON MORTGAGE SERVICES, <br> AS SERVICER FOR DEUTSCHE BANK <br> NATIONAL TRUST COMPANY, AS <br> TRUSTEE FOR SOUNDVIEW HOME <br> LOAN TRUST 2004-WMC1, <br><br>     Defendant. | Adversary No. 11-2460 (JKF) <br> Related to Adv. Doc. No. 1, Complaint; <br> Adv. Doc. No. 6, Motion to Dismiss |

**MEMORANDUM OPINION[1]**

**Introduction**

Before this Court is Deutsche Bank's motion to dismiss Debtor's complaint challenging its security interest in Debtor's residence.  The Debtor objects to Proof of Claim #2 filed on behalf of Saxon Mortgage Services as Servicer for Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2004-WMC1.  Although the initial complaint filed by

---

[1]This Memorandum Opinion constitutes our findings of fact and conclusions of law.

Debtor raised several grounds, many of them have been withdrawn.[2] Debtor's remaining objections question whether the entity filing the Proof of Claim has standing to do so, and, if it does, whether or not it has a secured claim. Thus, this Memorandum Opinion addresses the challenges raised in Deutsche Bank's Motion to Dismiss regarding Debtor's own standing and this Court's jurisdiction.

**Factual and Procedural Background**

On October 7, 2004, Debtor conveyed a mortgage to Mortgage Electronic Registration Systems, Inc., (hereafter "MERS"), as nominee for the lender WMC Mortgage Corporation, securing a debt in the principle sum of $127,300.00, against real property located at 521 Twin Oak Drive, Penn Hills, PA, 15235.  On March 10, 2008, the mortgage was assigned by MERS to Deutsche Bank National Trust Company as Trustee and Custodian for Soundview Home Loan Trust by Saxon Mortgage Services as Servicer under a Pooling and Servicing Agreement.  The assignment was recorded on April 3, 2008.  Pre-petition, on February 19, 2008, Deutsche Bank filed a foreclosure action in the Court of Common Pleas of Allegheny County, Pennsylvania against Debtor as a result of his default on the mortgage.  Although he was served with the complaint, Debtor failed to appear in the foreclosure action.  Deutsche Bank filed a Praecipe for Entry of Default Judgment on May 29, 2008.  Judgment was entered in favor of Deutsche Bank in the amount of $147,811.92 plus costs and interest on May 29, 2008.

---

[2]Debtor's counsel agreed at a hearing on January 5, 2012, to withdraw certain claims concerning fraud, unfair dealing, the Real Estate Settlement Procedures Act and the Truth in Lending Act. On February 16, 2012, Debtor's counsel filed a motion to withdraw the claims. This Court entered an Order on February 17, 2012, permitting the withdrawal without prejudice. Accordingly we will not address these matters in the Memorandum Opinion.

On July 3, 2008, Debtor filed for protection under Chapter 13. On July 24, 2008, Saxon Mortgage Services filed a proof of claim in its own name claiming a total secured debt of $148,058.63. The instant adversary complaint was filed on August 31, 2011.

Although captioned by Debtor as an Objection to Proof of Claim, the complaint is a challenge to the validity of the secured claim. There are inconsistencies regarding the identity of the defendant involved in this Adversary proceeding. Saxon Mortgage Services, Inc., filed the proof of claim at issue and is the named defendant in the adversary complaint filed by Debtor. The complaint is also inconsistent in referencing the parties, often referring to the defendant as "The Loan Trust." Moreover, the docket entry for the motion to dismiss states that the motion was filed by Saxon but the motion itself states that it was filed by Deutsche Bank. For purposes of clarity, we will refer to the defendant as Deutsche Bank throughout this Memorandum Opinion regardless of the inconsistencies in the nomenclature. Despite these irregularities we address the merits of the complaint and the challenge to our jurisdiction in the motion to dismiss.

Debtor asserts in his complaint that Deutsche Bank does not have standing to file a proof of claim and cannot be either a secured or unsecured creditor in this action, lacking both "possession or other indicia of ownership" of the note. Adv. Doc. No. 1, ¶ 11, at 3. Debtor claims that the note was not properly securitized and is not a part of the Loan Trust for two reasons. First, Debtor alleges that Deutsche Bank did not indorse or provide an allonge to the note to evidence Deutsche Bank's acceptance of the note. *Id*. at ¶ 14, at 4. Second, Debtor claims that the Mortgage was not assigned to Deutsche Bank until after the cut-off date specified in the Pooling and Servicing Agreement (hereafter "PSA") between Saxon Mortgages Services, Inc. and Deutsche Bank National Trust Company. *Id*. at ¶ 19. The complaint also asserts that

even if Deutsche Bank has standing, it holds only an unsecured claim because "any assignment of the mortgage without a corresponding assignment of the note is a nullity and [Deutsche Bank] cannot hold a perfected security interest in the Debtor's real property." *Id*. at ¶ 26, at 6.

Debtor requests from this Court a declaration that Deutsche Bank does not have standing to file a proof of claim and has no enforceable secured or unsecured claim against any property of Debtor's estate. In the alternative, should we find that Deutsche Bank does have standing, Debtor asks that the claims be treated as unsecured for purposes of the Bankruptcy proceeding.

Deutsche Bank responds to the complaint with a Motion to Dismiss. In the motion, Deutsche Bank asserts (1) that Debtor lacks standing to contest the transfer of the mortgage loan to the Loan Trust as he is not a party to the PSA and (2) that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine because disallowing the Proof of Claim would essentially void the state court's foreclosure judgment.[3]

Based on the pleadings, briefs and arguments of counsel, the uncontested material facts and the reasons that follow, Deutsche Bank's motion to dismiss must be granted.

## Discussion

*Jurisdiction*

Although the *Rooker-Feldman* challenge to jurisdiction is addressed in more detail below, we find at the outset that we have subject matter jurisdiction to adjudicate this adversary

---

[3] Deutsche Bank also asserts that Debtor's objection to Proof of Claim is precluded by the doctrine of *res judicata* because his arguments should have been raised in the state foreclosure action. However, we conclude that Deutsche Bank's Motion to Dismiss must be granted because Debtor lacks standing to challenge compliance with the PSA and, to the extent Debtor has standing, the *Rooker-Feldman* doctrine prevents us from exercising our subject matter jurisdiction. Accordingly, it is not necessary to reach Deutsche Bank's *res judicata* argument and this Memorandum Opinion will not address the doctrine of *res judicata*.

proceeding. Debtor is challenging the validity of a lien which is a core matter. *See* 28 U.S.C. §157(2)(k).[4] Deutsche Bank's Motion to Dismiss asserts that this Court lacks subject matter jurisdiction because of *Rooker-Feldman*. However, in addressing their argument, we find that this Court does have jurisdiction over this matter although *Rooker-Feldman* prevents us from exercising it.[5]

*Standing*

The Court will first address the issue of Debtor's standing as it is questioned by Deutsche Bank. Federal courts have rejected claims brought by debtors who challenge compliance with procedures in Pooling and Servicing Agreements to which they are neither a party, nor a third party beneficiary, for lack of standing. *See, e.g., Schieroni v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 3652194 (S.D. Tex., Aug. 18, 2011); *In re Walker,* No. 10-12592 ELF, 2012 WL 443014 (Bankr. E.D. Pa., Feb. 13, 2012); *In re Almeida*, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009).

Deutsche Bank argues that Debtor falls into this category and lacks standing to challenge the validity of the assignment of the mortgage. For this argument Deutsche Bank relies on a recent decision of the Bankruptcy Appellate Panel in the First Circuit. *Correia v. Deutsche Bank Nat'l. Trust Co. et al.*, 452 B.R. 319 (B.A.P 1st Cir., 2011). In *Correia* the court held that the debtors lacked standing to challenge the validity of the assignment of the mortgage because they

---

[4]Section 157(b) of title 28 of the U.S. Code provides, in relevant part:

>(2) Core proceedings include, but are not limited to –
>    (k) determinations of the validity, extent, or priority of liens. . . .

[5]*See infra* note 7 and accompanying text.

5

were not parties to the PSA, nor could they show that they were third party beneficiaries, noting that the investors who bought securities based on the pooled mortgages were the entities with standing to object to defects in the mortgages which resulted from failure to abide by the provisions of the PSA. *Id.* at 324.

In *Correia*, Chapter 13 debtors brought an adversary proceeding to set aside a bank's post-petition foreclosure on their home, challenging the validity of the transfer of the mortgage. *Id*. at 319. The Bankruptcy Court for the District of Massachusetts granted summary judgment for the bank and the BAP affirmed on the basis that the debtors lacked standing to challenge the validity of the assignment of the mortgage. *Id*. at 324. The court found that the debtors could not show that they were parties to, or third party beneficiaries of, the PSA, and therefore could not question the compliance with the terms of that agreement. *Id.*

The rationale applied by the court in *Correia* is applicable to the present case. Here, Debtor is not a party to the PSA, nor has he established any facts to show that he is a third party beneficiary. He therefore cannot question whether or not the parties to the contract complied with its terms. We find that Debtor lacks standing to challenge compliance with the terms of the PSA and his challenge to the validity of the security interest fails to the extent that it is based on a breach of such an agreement.

It is important to note that Debtor's argument is not entirely based on the terms of the PSA so we shift our attention to the remaining portion of his argument and assess Debtor's standing to raise it. Debtor also argues that there is no evidence of Deutsche Bank's acceptance of the note. He claims that there is no allonge affixed to the note or other indorsement showing that the transfer occurred or that the note was accepted. Adv. Doc. No. 1. at ¶ 14. This

challenge is based on what Debtor refers to as "a matter of law" and not the terms of the PSA. *Id*. at ¶ 13, at 4. However, Debtor fails to cite any case law or statutory language which supports his argument or indicates to what "matter of law" he refers. *Id*. This Court's own research indicates that Debtor could be referring to Pennsylvania's Uniform Commercial Code which sets forth the requirements for negotiable instruments, transfers and indorsement.[6] "There is abundant legal authority for the proposition that mortgage notes, such as the one involved in this matter, are negotiable instruments governed by article 3 of the UCC." *Walker,* 2012 WL 443014 at *7 (citing *In re Carmichael*, 448 B.R. 690, 693-94 (Bankr. E.D. Pa. 2011); *In re AppOnline.com, Inc.*, 321 B.R. 614, 621-24 (E.D. N.Y. 2003), *aff'd on other grounds*, 128 F. App'x 171 (2d Cir. 2005); *J.S. Judge & Co. v. Lilley*, 28 Pa. D&C. 3 (Phila. Mun. Ct. 1937)).

Although a debtor lacks standing when challenging an assignment of a mortgage due to failure to comply with the terms of a PSA, courts within the Third Circuit have not questioned the standing of debtors challenging a proof of claim based on failure to comply with the Uniform Commercial Code. *See Kemp v. Countrywide Home Loans*, *Inc.*, 440 B.R. 624 (Bankr. D. N.J. 2010) (sustaining debtor's objection to a secured proof of claim because the claimant failed to satisfy the indorsement element for negotiation of the note under the Uniform Commercial Code); *Walker,* 2012 WL 443014 at *5-6 (addressing debtor's argument that claimant did not have a right to enforce the note under the Pennsylvania Uniform Commercial Code but finding that the claimant complied with the UCC and had possession of the note). However, regardless

---

[6]The UCC establishes the requirements necessary for the transfer of a note which includes the "transfer of possession of the instrument and its indorsement by the holder." 13 Pa. Cons. Stat. Ann. § 3201(b). Such an indorsement must appear on the note or on an allonge affixed to the instrument. *Id*. at §3204 (a).

7

of Debtor's standing, under the facts of this case, the *Rooker-Feldman* doctrine bars such a challenge.

*Rooker-Feldman*

"In certain circumstances, where a federal suit follows a state suit, the *Rooker-Feldman* doctrine prohibits the district court from exercising jurisdiction." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163-164 (3d Cir. 2010). The doctrine of *Rooker-Feldman* takes its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). These two cases prevent parties from bringing claims in federal district courts when the plaintiff in federal court seeks to void the state court judgment, *Rooker*, 263 U.S. at 416, or, when the claim is "inextricably intertwined" with the state adjudication, *Feldman*, 460 U.S. at 486-487.

The term "inextricably intertwined" has proven to be difficult for courts to interpret and apply and has caused confusion regarding the *Rooker-Feldman* doctrine. In 2005 the United States Supreme Court discussed *Rooker-Feldman* for a third time and declared that lower courts had, at times, extended the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). The Supreme Court defined *Rooker-Feldman* as a doctrine preventing district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284.

Following the Supreme Court's decision in *Exxon Mobil*, courts began to review the application of the *Rooker-Feldman* doctrine more carefully, especially in cases where claims were found to be "inextricably intertwined" with the state adjudication. *See e.g.*, *Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1139 (10th Cir. 2006) ("[t]he *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court judgments"); *Federacion de Maestros de Puerto RICO v. Junta de Relaciones del Trabajo de Puerto RICO*, 410 F.3d 17, 23-24 (1st Cir. 2005) ("the . . . doctrine now applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment'"). *Accord Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

Utilizing the guidance provided by the Supreme Court in *Exxon Mobil,* the Court of Appeals for the Third Circuit began to evaluate its application of the doctrine and in *Great Western* developed a test for determining when *Rooker-Feldman* prevents federal court adjudication. *Great Western*, 615 F.3d at 166. The court concluded that in order for the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Id*. at 166 (citing *Exxon Mobil,* 544 U.S. at 284). The court in *Great Western* uses this four element test to break down the holding in *Exxon Mobil* and establishes that the phrase "inextricably intertwined" is not an additional test but is a "descriptive label" attached to claims that meet the four elements. *Great Western*, 615

9

F.3d at 170. The court utilized this test to prevent the doctrine from being applied too broadly. *Id*.

Debtor has two arguments regarding *Rooker-Feldman* in the present case. He first argues that the *Rooker-Feldman* doctrine is limited due to Congress's power to give federal courts jurisdiction to hear matters that would otherwise be barred. Specifically, he asserts that Congress's Article 1 Section 4 Bankruptcy Power determines what judgments may be given preclusive effect in a bankruptcy and *Rooker-Feldman* does not apply in a bankruptcy court. He argues that bankruptcy courts have exclusive jurisdiction over a debtor's property and that 28 U.S.C. § 1334 gives bankruptcy courts original jurisdiction in civil proceedings arising under Title 11 of the United States Code. Debtor recognizes that bankruptcy courts in the Third Circuit have applied the *Rooker-Feldman* doctrine but asserts that the holdings in such cases "misapprehend the nature and scope of the **Rooker Feldman Doctrine**." Adv. Doc. No. 16 at 3, Brief filed on behalf of Debtor. (Emphasis in original.) However, we find that the doctrine has been properly, and repeatedly, applied in bankruptcy courts. *See e.g.*, *In re Knapper*, 407 F.3d 573 (3d Cir. 2005); *In re Dougal*, 395 B.R. 880 (Bankr. W.D. Pa. 2008); *In re Holler*, 342 B.R. 212 (Bankr. W.D. Pa. 2006). Although Debtor argues that *Rooker-Feldman* should not take away a bankruptcy court's jurisdiction when it has been granted by Congress, he fails to recognize that the doctrine does not take away a court's jurisdiction, but merely prevents the exercise of it in certain circumstances.[7] In *Exxon Mobil* the United States Supreme Court

---

[7]We acknowledge that the Third Circuit has articulated the effect of the *Rooker-Feldman* doctrine on subject matter jurisdiction using two seemingly different analyses. In *Turner v. Crawford Square Apartments III*, *L.P.* the court stated that "[t]he Rooker-Feldman doctrine *deprives* a federal district court of jurisdiction in some circumstances to review a state court
(continued...)

discussed the effect of the doctrine on federal courts' jurisdiction and explained that *Rooker-Feldman* provides a limited circumstance that precludes a federal court "from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." 544 U.S. at 291.

Additionally, in *Iannini v. Deutsche Bank Nat'l. Trust Co.*, 2010 WL 2104244 (W.D. Pa. May 24, 2010), the United States District Court for the Western District of Pennsylvania held that the *Rooker-Feldman* doctrine is applicable in bankruptcy proceedings. In *Iannini* the court ruled that because the state court foreclosure judgment was entered pre-petition, *Rooker-Feldman* limited the bankruptcy court's "ability to have a collateral review of" the judgment. *Id.* at *10. Accordingly, we are not persuaded by Debtor's argument that *Rooker-Feldman* does not apply in bankruptcy cases. We further disagree with Deutsche Bank's position that we lack jurisdiction. Rather, we find that *Rooker-Feldman* precludes us from exercising our jurisdiction to grant the relief sought.

Debtor's second argument is based on the elements of the *Great Western* test. He argues that two of the four elements are not met in this adversary proceeding. As we discussed above, in order for the *Rooker-Feldman* doctrine to bar a claim (1) the federal plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by that state court judgment; (3) the

---

[7](...continued)
adjudication." 449 F.3d 542, 547 (3d Cir. 2006) (emphasis added). However, more recently, in *Great Western* the court stated that "[i]n certain circumstances, where a federal suit follows a state suit, the *Rooker-Feldman* doctrine *prohibits the district court from exercising jurisdiction*." 615 F.3d at 163-164 (emphasis added). We find that the latter is a more precise articulation of the effect of *Rooker-Feldman* and this Court will follow the standard established in *Great Western*.

judgment must have been rendered before the claim was filed in federal court; and (4) the plaintiff must be requesting that the federal court review and reject the state court judgment. *Great Western*, 615 F.3d at 166. Debtor concedes that the first and third elements of the test are met, but contends that the second and fourth are not.

Debtor insists that he does not complain of injuries caused by the state court foreclosure judgment, but rather complains of the actions of Deutsche Bank because it is not the proper party to file a proof of claim. He also asserts that he is not asking this Court to review and reject the foreclosure judgment, but is asking this Court to determine whether there is a valid secured claim. Despite Debtor's characterization of his challenge, we find that he complains of injuries caused by the state court judgment and that he invites this Court to review and reject the foreclosure judgment in the guise of an attack on who holds the claim. Should we allow Debtor to "challenge the standing" of Deutsche Bank to file the Proof of Claim, we would, in effect, be reviewing and rejecting the state court's judgment in favor of Deutsche Bank which establishes that it is the proper creditor with a secured interest in the Debtor's property.

In reviewing the application of the *Great Western* test in this case, we look to the decision of the bankruptcy court for the Eastern District of New York which dealt with similar facts. *In re Agard*, 444 B.R. 231 (Bankr. E.D. N.Y. 2011). In *Agard* the debtor questioned the creditor's standing, claiming the creditor failed to establish that it held an enforceable right against the property. *Id.* at 235. As in the case at hand, the state court entered a judgment of foreclosure against the debtor prior to the debtor's filing bankruptcy. *Id.* The creditor argued that judicial review of the judgment was barred by *Rooker-Feldman*. *Id.* at 238. In determining whether or not the claim was barred by *Rooker-Feldman*, the court employed a four element test

to be satisfied in order for the doctrine to apply. *Id*. at 242-43. The test in *Agard* is virtually identical to the *Great Western* test.[8]

The debtor in *Agard* argued that she was not asking the court to set aside the judgment of foreclosure, but rather was asking the court to make a determination as to the creditor's standing to seek relief from stay and, therefore, *Rooker-Feldman* did not bar the relief sought. *Id*. at 243. The court held that "although the debtor says she is not seeking affirmative relief from this Court, the net effect of upholding the Debtor's jurisdictional objection in this case would be to deny U.S. Bank rights that were lawfully granted to U.S. Bank by the state court. This would be tantamount to a reversal which is prohibited by *Rooker-Feldman*." *Id*. at 244.[9]

We find that the same is true in the present case. Although Debtor alleges that the state court did not cause his harm and that he is not requesting this Court to review and reject that judgment, we cannot agree. A ruling that Deutsche Bank is not a creditor or has no claim, either secured or unsecured, would clearly invalidate the state court judgment. All four elements of the *Great Western* test are met and the *Rooker-Feldman* doctrine prevents this Court from exercising its subject matter jurisdiction, barring the relief Debtor seeks.

---

[8]In *Agard* the elements of the test are laid out in a different order.

[9]The court also rejected the debtor's argument that *Rooker-Feldman* did not apply because the foreclosure judgment was entered on default and was procured by fraud. 444 B.R. at 243. The court found no exception to the doctrine based on default judgments or those procured by fraud. *Id*.

13

**Conclusion**

      Based on the foregoing reasons the Court will grant the motion to dismiss Debtor's complaint.

      An appropriate Order will be entered.

DATE:   Dated: 3/7/2012 14:37:36

*Judith K. Fitzgerald*

Judith K. Fitzgerald   **cjs**

United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| RONALD B. WASHINGTON, | Bankruptcy No.: 08-24389 (JKF) |
| | Chapter 13 |
| Debtor. | |
| | |
| RONALD B. WASHINGTON | |
|     Plaintiff. | |
| | |
| v. | Adversary No. 11-2460 (JKF) |
| | Related to Adv. Doc. No. 1, Complaint; |
| | Adv. Doc. No. 6, Motion to Dismiss |
| SAXON MORTGAGE SERVICES, | |
| AS SERVICER FOR DEUTSCHE BANK | |
| NATIONAL TRUST COMPANY, AS | |
| TRUSTEE FOR SOUNDVIEW HOME | |
| LOAN TRUST 2004-WMC1, | |
| | |
|     Defendant. | |

### ORDER GRANTING MOTION TO DISMISS COMPLAINT

**AND NOW**, this 7th day of **March, 2012**, for the reasons expressed in the foregoing Memorandum Opinion of even date, it is **ORDERED** that the Motion to Dismiss filed on behalf of Deutsche Bank is **GRANTED.** The Complaint is Dismissed with prejudice.

It is **FURTHER ORDERED** that the Clerk shall close this Adversary.

Dated: 3/7/2012
14:39:06

*Judith K. Fitzgerald*    cjs
Judith K. Fitzgerald
United States Bankruptcy Judge